The first case for argument this morning is 23-1156, Uniloc 2017 v. Sling TV. Mr. Jackson, whenever you're ready. Thank you, Your Honor. Good morning. May it please the Court. The board below in this appeal erred by construing the phrase, quote, presentation data that represents content, close quote, to include content graphic including thumbnails and titles. And I think what's really helpful to understanding the error and the structure of the claim is actually to start with what's been identified in the petition as element 1B. Element 1B reads, storing data indicative of the first collection of presentations so as to be associated with the presentation data. The presentation data is actually recited in element 1A. Can I ask a question? Yes, sir. Why does this make a reference for the obviousness analysis? I mean, if you're right, does that mean that Lee is off the table as an invalidating reference? Yes, Your Honor, it does. But I thought Lee was cited to satisfy the 1A limitation on the basis of Lee's library, not on the basis of any RSS feed or any other aspect of the patent that would involve metadata. So, Your Honor, the content library was cited as the source of the data that's stored in element 1A. So, it's the storage location, the content library. But the debate wasn't whether or not it was metadata or some other type of data. The debate on remand, the debate is what are the various pieces of data? Within Lee. I mean, I was having trouble understanding how, if you were to prevail on your argument, how this would necessarily neuter Lee as an invalidating reference for the 1A limitation. I'm still not convinced it makes any difference. I'll do my best to persuade you otherwise. So, for element 1A, in the petition, Sling identified metadata. They identified content titles and thumbnails. In 1B, I'm sort of My argument is that the data indicative of the first collection of presentations is the metadata. And so, the metadata belongs in 1B, not in 1A. 1A is directed to storing the content. And so, if 1A is storing content, but the petition only identified metadata for 1A, then the petition fails to show that the claims are invalid, based on Lee. And your contention is that the proper construction of 1A is that it cannot include metadata and it must include content? Yes, Your Honor. That's right. Now, wouldn't one of ordinary skill in the art understand presentation data that represents content to be broad enough to include content as well as metadata about content? I think based on the specification, the 273 patent specification, one of skill in the art would understand that data indicative of the presentations or the collection of presentations is always being referred to in specification as the metadata. And when you talk about the content of 1A, that that is the, I'm sorry, the data is stored, if the language is correct here, presentation data that represents content, that has to be the content itself. And that's also disclosed in the specification as well. I don't think presentation data that represents content is anywhere in the specification other than in the claims, correct? That precise phrase, correct, is not. And so, you're arguing that other language in the specification would tell one of skill in the art that presentation data that represents content is so narrow that it excludes all metadata? Well, I don't know that it necessarily is narrow, but yes, in effect, it excludes all  Well, it excludes metadata in your view. Yes, your honor. That's right. And if we disagree with that, then we have to affirm, right? Unfortunately, I agree. Yes, your honor. So, if I could give you some additional pieces here. So, for example, this is now going back to the data indicative of the first collection of presentations. At column 5, lines 16 to 18, the specification states that particular content graphics 230, so content graphics thumbnail, for example, particular content type indicators 235, and particular content information are stored to indicate, there's the word, individual presentations, right? Later, at column 6, lines 53 to 56, the specification states that in certain embodiments, the requested information may include a content title. That's the other piece that is relied on for 1A, but it may include content title, date, series information, and description akin to that to be displayed in a corresponding indicator. There's the word that links it to 1B, indicator 240, and 240 is shown in figure 2. Then, specifically with respect to the storing aspect of the claims, and again, I'm still talking about 1B, the specification states that server 32 may associate the stored content indicative information provided at block 425 with the file stored at block 450. So, this is that step of, in 1B, the claim says, storing data indicative of the first collection of presentations so as to be associated with the presentation data. This passage right here, this is column 7, lines 17 to 19. It's telling us that the server, which is the database server, may associate the stored content indicative information provided earlier in the process at block 425 with the file stored at block 450. The file stored is the content file. As I said earlier, the indicative information that's stored at block 450 may include the content title, date, series information, and description. Again, that's provided up above in column 6, lines 53 to 56. As to the presentation data in element 1A, the specification gives us different types of content types that can be a part of the invention. There's textual content, graphical content, audio content, audio-visual content, et cetera. The specification also describes the, quote, presentation as the content that is downloaded or streamed to the user's computer. That's at column 6, lines 1 to 6. On the one hand, you have in the specification the storing of the content, the downloading of the content, or in the case of the feed, the identification and ability to access the content through the feed. You also have in element 1B, as it relates to the presentation data, that it stores data indicative of the first collection of presentations. We have, I think, the specification, I believe, is very clear that the data indicative of the first collection of presentations corresponds with the various types of metadata that are described throughout the specification, in particular in the locations I just read the  The same structure is then followed in the claims. We know this based on the prosecution history. In the amendment, part of which is APPX 776 to 777, these are the remarks section of the amendment that was made. The applicant's attorney explained and distinguished the prior Cooley reference based on the fact that Cooley only taught the aggregating of multiple RSS feeds, or multiple feeds. I don't want to overstate Cooley. Multiple feeds. The claims then under consideration recited aggregating the feed and non-feed data. That's what's recited in 1A and 1B. How does that help you? How does that? I think that what it shows is that the claims, you can't read 1A and 1B as covering the same data that's recited for 1C, the feed information. The feed, as the court is aware, the feed limitation is quite lengthy with sub-components. That's your claim construction argument that they have to be interpreted the same way. In the end, I get to the same result. I mean, the indication from our court before was that you don't necessarily need to read them together. 1A can have independent meaning and the board found 1A to have independent meaning. Thus far in the conversation, maybe it's because I'm a little hard of hearing, I haven't heard you really arguing the claim construction issue. You're just assuming that you're right. Therefore, metadata is excluded in 1C and 1A. Your Honor, I'm certainly not trying to assume that I'm right. No, I understand that, but I haven't heard you stand up and say this case turns on claim construction. Certainly, this case does turn on claim construction. I would think that's what you have to argue, but maybe I've missed something in this case. I would have expected you to stand up and say the claim construction drives the result here and the suggestion by this court when the case was heard earlier was incorrect and that the board thus incorrectly followed the hint from this court. I didn't hear you saying that until this conversation you and I are having right now. Yes, Your Honor. That seemed to me like a little late in the game for the dispositive issue and the appeal. I started by explaining that the board's error was its construction of element 1A. But you didn't explain why. Yes. You can say one thing and say, oh, the board error. Yes. Move on, and of course, Judge, you'll agree with me, but you usually say an error because 1, 2, 3, 4, 5. Because it included thumbnails and titles, which are metadata. And you didn't deal with the fact that this would exclude the preferred embodiment and your argument is, well, this is a very unusual case in which the preferred embodiment can be excluded. No, Your Honor. I'm not saying this is a case where the preferred embodiment is excluded. I know that was the issue in the first appeal. And when this court issued its claim construction in the first appeal, that has ripple effects throughout the way the rest of the claim is understood. And so yet, at the end of the day, the PTAB on remand did err in its construction of element 1A by saying that metadata, the thumbnails and the titles, could satisfy that element. Thank you. Thank you, Your Honor. Okay. You're into your rebuttals now. Thank you. I'll yield the floor. Thank you. Good morning. Good morning, Your Honor. May it please the Court. This Court should affirm for three reasons. The first is of academic interest. We think the claim construction argument being presented here was already rejected by this Court during the first appeal, when the appellant here raised that as an alternative basis for affirmance during the first appeal, which led to the footnote that I was just alluded to. The second point is that the construction that Uniloc is now... You actually view our opinion earlier to have rejected the claim construction argument or to have flagged it as a problem? We interpret the result to be a rejection of the argument because it was an alternative basis for affirmance and this Court did not affirm. And, in fact, it then dropped the footnote saying we don't see a reason these two terms have to be the same. In essence, rejecting alternative basis for affirmance. I'll get around to that in just one second. It's the least important of the three issues, to be sure, but it is somewhat interesting. The second point is that the construction that Uniloc is seeking is just wrong on the merits. The PTAB was correct to interpret these two terms to mean different things. And then third, even if the construction were accepted, Lee still needs the construction because we have two alternative mappings of Lee in the petition. The Board found both of them satisfy the construction. One of them, the thumbnails, are certainly part of the content and Lee says so. So even under their construction, they still lose. Even under their construction? Under their construction, yes. Under Uniloc's construction, the one that's... Sorry. Yes, remember. Under the construction that Uniloc is seeking on appeal, they would still lose. Okay, just briefly on the law of the case, what I would point you to is Uniloc's original brief, which is in the appendix of 1322. Their second issue that they list was, as a further basis for affirmance, whether the Board properly declined to construe similar claims and claim one differently. That is exactly the same issue that's now being presented on appeal. This Court rejected that basis for affirmance in its opinion. But we did not expressly say what the construction should be. You would agree with that? I agree, nor has really Uniloc been expressed about what... I mean, I heard some... During your questioning just now, I heard finally, I think, some understanding of what the construction is that they're seeking. But as they've been arguing to the PTAB, the only thing they've been really saying is that the two terms have to be construed the same. And then the corollary to that is that because they didn't want to say, therefore the presence of metadata in the data representing the content takes it outside the claim. That's sort of the corollary. To be clear, what we said in the footnote the last time around was we think that the language of the two limitations, 1A and 1C, does not require the same construction. It seems like we left the door open to maybe it should be the same construction. Yeah, I agree. It's not a clear-cut issue. But we do think, again, because it was an alternative basis for affirmance, if the Court had agreed the two terms should be construed the same, then it could have affirmed in the first case, and it did not. Okay, now let me get to the merits. I think the easiest way to address the merits is just to look at what the patent owner actually told the PTAB during the IPR. Here's what they said. This is Appendix 264. Under a plain and ordinary meaning, data that, quote, represents content, end quote, that's the language of 1A, would include the content title. That's exactly what the PTAB found in the final written decision. So I'm reading, that was from 264, and this is the patent owner's brief to the PTAB. Now that was before the remand, you know, I concede. But I certainly agree with what they said there, that under a plain and ordinary meaning, data that represents content would include content title. That's borne out by looking at the actual specification. Judge Stark, as you note, the word presentation data is not in the spec. It only appears in the claim. So the only way we can try to infer meaning of what presentation data is is to look at what the specification discloses. The specification discloses this Figure 2, which is at Appendix Page 33. That shows essentially the page that would be shown to the user, and it's got a list of these content items, and there's information about each of those content items shown there. The most relevant thing I guess you could point to is that Section 240, which is a box around various textual data. The very first item is title. So that's the title of the item. Then if you look to the left of that, you'll see this box 230, which is an empty box, but it's clearly meant to reflect some sort of graphic, like a thumbnail. So those are the exact two items from Lee that we mapped to this claim, saying, you know, here we are in the embodiment that they give us, and this is the presentation data. It's a thumbnail. It's a title. I mean, it's other things as well, but at least those two things, we find both of them in Lee. Therefore, Lee is disclosing this element. What's the data that's stored in 1B? In 1B? In this figure? I thought it was essentially an underlying code that had not been disclosed to the viewer. Yeah, so that's not fully briefed. We haven't taken a position on what in 1B would matter. I'm just trying to understand. Part of the problem I had with this case was the briefs didn't really tell me how this patent works. Correct, yeah. It didn't really explain to me what's really in the real world happening. Yeah. The best I could come up with was that the 1B step was storing underlying code that hadn't been presented to the user. I think that's possible. I think it could be other things shown in this figure, too. So that element 235, which is kind of the smaller box in between the two boxes, it's possible that that is what corresponds to element 1B. I just didn't understand 1B to be relevant to our greeting, the argument made by your adversary here, and whether he was right about whether 1A includes or excludes what he calls metadata. I agree that 1B has nothing to do with the issue that's presented on appeal. What we mapped from Lee to 1B is something entirely different. So we mapped in Lee its addresses and its tags. Those are underlying data that's not necessarily shown to the user but could be used to search for things. I think Lee talks about sporting events, so you could search for Federer and you would get all the news stories relating to Roger Federer. That would be data that's stored in element 1B, which is not necessarily shown to the user until they search for it. That's totally consistent with how this claim works. The point of the claim, what is this patent about? This patent is about taking different pieces of data from the Internet and putting them on one page. That's what it's about. So the claim broadly describes various types of data that you could put on that single page. But our point, 1B, whatever you want to say about 1B, there was no dispute that Lee has it. The way we mapped to it was something different than what we're mapping to element 1A or element 1C. So this is not an issue where we're relying on the same data to satisfy two different claim limitations. I understand Unilock, at least, to be arguing that 1B is metadata. He walked us through the specification and says, 1B would always understand that when this inventor is referring to metadata, the inventor uses the phrase data indicative or indication. That's what 1B is about. Therefore, if that's right, then metadata is not in 1A. Do you at least understand that to be the argument? Perhaps. That's a charitable view of the argument. There's various problems with that argument. First and foremost, the word metadata appears nowhere in the 273 specification. That's just not a term in the patent anywhere. So I think it would be a stretch to try to say that somehow there's a distinction being drawn by the inventor between metadata and non-metadata by using these different claim terms. It's also inconsistent with what I just read to you about Unilock's own view of what the claim means. They said title is, under planar meaning, data that represents content. Then specification, again, I pointed to that box 240 in Figure 2, and that's described in the specification as content information. That's from Column 5, Line 16. It's roughly the same section that I think Pat Turner was pointing to. Anyway, in our view, having read the specification, the board was certainly within its right to say, yeah, this element is broad. It could include the content, but it could include other things like title. Title is one example of things that the specification itself seems to tie to this notion of the element 1A. Let's move to the third point, which is that even if you were to accept the construction that Unilock is now seeking, Lee would still satisfy it because the thumbnails in Lee are, in fact, part of the content. So it's not that they are purely metadata. It is itself an image from the video. So Lee gives an example of a stream of videos, and if you take a single image out of a video and paste it onto that screen, that is part of the content. So it would satisfy this construction. That's sort of like moving the pea around under the shell. The guy in the park that asks you to bet on where the pea is under the shell. And metadata is either content or not content, depending on which shell you put it under? I mean, perhaps, but the question is... It sounded like slight of the hand to me. Well, I mean, if you're doing slight of the hand, I think it's Unilock in trying to say that the claim means one thing and then on appeal saying it means a different thing. But in our view, what we mapped were two different things. I mean, how can metadata be sometimes not metadata? Again, the problem is that the word metadata is not patented at all. So does metadata ideas come... Metadata is just data about data, right? It is. I mean, in general, and that seems to be how Lee is using the term. One thing I can tell you for sure, though, is in Lee, the thumbnails are not metadata. And I know that because Lee tells us that. So metadata can be content? It certainly could be content in some sense. And maybe it's not content? I think it is possible. It is content, it is not content. And I think that's possible depending on the context and what you're talking about, right? But in the case of our mapping, if you want to look at just Lee's thumbnail mapping where we said, look, Lee's thumbnails satisfy element 1A. They are presentation data that represents content. So the thumbnail is representing... It's representing content, it's representing a video, but it's representing that video by giving you just one image from that video, pulling out a single frame of that video and displaying it for you. So in that sense, it is the content. It is part of the content. It's not the whole thing, but it's certainly part of the content that would satisfy even their construction of element 1A. And again, we know this is true because Lee tells us, first of all, in paragraph 64 of Lee's, this is at appendix page 981, it says, only part of the retrieved items is displayed. And then it goes on. For videos, it might be, for example, thumbnails. So clearly in Lee, thumbnails are part of the content itself. And we know it's not metadata because in paragraph 118 of Lee, he says this. The items are actually displayed through virtual representations, which correspond to icons, metadata, headlines, or thumbnails. So we know that thumbnails and metadata, in Lee's view, are two different things. The board was certainly entitled to rely on that in concluding that Lee satisfies the clause. This third argument is not one that the board reached. Is that right? That is, the board never said to us Lee would render obvious even under patent owner's construction. Or if they did, I didn't see that. If you look at appendix 18, the final decision, they do cite to Dr. Storer's testimony what he says. They say, Dr. Storer testifies that Lee's content library can store both data files and part, in italics, of an item of content, which a person of ordinary skill in the art wouldn't understand to include thumbnails and titles. So they certainly hint strongly that they understood they were mapping two different things to element 1A. I agree with you they don't say that even if we would accept utilized construction, we would therefore... Because in fact on 19, as you know, they go on to say we don't adopt patent owner's construction, as we've explained above. And what you cited is really their description of what the petitioner says. It is, but they didn't bother to quote it. It's important that there are these two different mappings and it's relevant. If we're not persuaded by either of your first two arguments, can we really affirm on the third one, or do we have to send it back? No, I think you can affirm on the third. I think you could reasonably discern that they found both of those things satisfy the claim element. And so if you were to construe the claim element the way Unilock now sees, which I think would be wrong and inconsistent with the first opinion, but if you did that, I think you could still discern that the PTAB probably have already agreed that these thumbnails would satisfy that narrower construction. The other thing I would point to is appendix B, front of incision page 15, where they say, further we do not agree with patent owner's argument that titles and thumbnails cannot be presentation data that represents content because they are metadata, whether thumbnails and titles not contained in RSS feed metadata are immaterial to whether they are presentation data that represents content. So I think again there, again, the board is mapping both to the claim and even if you were to conclude that somehow titles were metadata and are outside the scope of the claims, the leaf thumbnails would still clearly be in the scope of the claims, and I think the board's opinion suggests as much. Unless the board has any other questions.  Thank you, Your Honor. Let me start, if I can, where counsel Persling ended, which is on APPX 15, and he read from the paragraph there in the middle of the page, a couple of sentences. The first one was, we do not agree with patent owner's argument that titles and thumbnails cannot be presentation data that represents content because they are metadata. Well, that's the error. That is the error that we have appealed in this case, is that construction. So I'm not sure that that's really, that is the issue. We can't just say that we defer to the board on that because they said that. If we did, we'd have no basis for appeal. Second, on page APPX 18, counsel also referred to the passage here where the board is describing Dr. Stewart's testimony. First of all, Judge Prost, you're absolutely correct. This is the classic PTAB analysis. They'll summarize what they view as the relevant part of the petitioner's argument. They'll summarize the relevant part of the patent owner's argument, and they typically give their analysis and their conclusions. And this is in the summary of the petitioner's analysis. So they aren't finding that thumbnails or titles would qualify and satisfy element 1A here. In fact, if you look at Dr. Stewart's testimony that's actually cited by Sling in their briefing, he never actually analyzed that. He simply sort of said, he actually assumed the conclusion. He said in the 273 patent specification there are these titles and thumbnails that are disclosed. I find the same disclosure in Lee. And therefore, he concludes that those teachings from Lee satisfy element 1A. But that begs the question is what data is actually recited in element 1A and what's not? So there isn't evidence supporting the conclusion that the board found in the alternative that Lee satisfies patent owner's proposed construction. Another point that was made was that we haven't really stated our construction. And I'll just direct the court to page 11 of Appellant's principal brief. In there we do provide the construction of element 1A or at least part of element 1A which is presentation data that represents content. We say it should be construed as the data or portion of the data of the audio visual content itself, not metadata. And that parallels the court's decision in the Netflix case, the district court's decision in the Netflix case. And I think the district court's decision in the Netflix case uses slightly different wording but Unilock would be fine with that construction as well, Your Honor. And so the other language is that Lee teaches that thumbnails in particular, thumbnails that were discussed, that thumbnails are part of the content. This is really, I think, not directly relevant because of my argument that the board didn't actually find that. But just to head that off, recall that when we're analyzing whether the claims of the 273 patent are satisfied or not, we have to use the language of the 273 patent and the specification. So if the 273 patent tells us that metadata are these particular types of data, it doesn't matter what Lee characterizes those same pieces of data. In this case, whether it be content or metadata. There might be some dispute in the art as to where the line is, for example, between what's metadata versus what's content. I don't know. That hasn't been developed on this record. I'm simply saying that we have to use the language of the 273 patent itself when we're analyzing whether the claims of the 237 patent are disclosed or rendered obvious by the prior art. And with that, I'll yield the rest of my time. Thank you. We thank both sides. The case is submitted.